**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| RYAN EAGLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-2533-KHV |
| KANSAS COUNSELORS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

Ryan Eagle brought suit pro se against Kansas Counselors, Inc., a debt collection agency, for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., in efforts to collect a $244.17 medical debt that plaintiff disputed with the original creditor. On October 9, 2012, plaintiff signed a settlement agreement. This matter is before the Court on Plaintiff's Motion To Vacate Settlement Agreement (Doc. #26) filed October 19, 2012, and defendant's Motion To Enforce Settlement Agreement (Doc. #37) filed November 1, 2012. After plaintiff filed his motion, counsel entered their appearance for plaintiff. Because the parties entered a binding, written settlement agreement with no evidence of fraud or bad faith, the Court overrules plaintiff's motion to vacate and sustains defendant's motion to enforce.

**Legal Standards**

The Court has the power to summarily enforce a settlement agreement while the case is pending before the Court. United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993). State contract law governs the formation, construction and enforceability of settlement agreements. United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000). Under Kansas law, "in the absence

of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." Krantz v. Univ. of Kan., 271 Kan. 234, 241-42, 21 P.3d 561, 567 (2001); see also Woods v. Denver Dep't of Revenue, Treasury Div., 45 F.3d 377, 378 (10th Cir. 1995) (party who knowingly and voluntarily enters settlement ordinarily cannot avoid settlement because he changes his mind); Lewis v. Gilbert, 14 Kan. App.2d 201, 203, 785 P.2d 1367, 1368 (1990) (party's change of mind no basis for not enforcing agreement). The Court may, however, set aside a settlement agreement on the ground of mutual mistake of the parties. Id. at 241-43, 21 P.3d at 567-68. But a "mere mistake of fact on the part of one of the parties to a release, in the absence of fraud, duress, undue influence, or mental incapacity, is not sufficient ground for the avoidance of a release." Fieser v. Stinnett, 212 Kan. 26, 30, 509 P.2d 1156, 1160-61 (1973). The law favors the compromise and settlement of disputes. Krantz, 271 Kan. at 241-42, 21 P.3d at 567.

A binding agreement requires a meeting of the minds on all essential terms. Albers v. Nelson, 248 Kan. 575, 580, 809 P.2d 1194, 1198 (1991); Augusta Bank & Trust v. Broomfield, 231 Kan. 52, 60, 643 P.2d 100, 106-07 (1982). To constitute a meeting of the minds, the parties must have a fair understanding that normally accompanies mutual consent, and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract. Steele v. Harrison, 220 Kan. 422, 428, 552 P.2d 957, 962 (1976); see Andra v. Lean P. Peebler Revocable Trust, 286 P.3d 576 (Table), 2012 WL 4937465, at *6 (Kan. App. 2012) (meeting of minds is shorthand for requirement that parties to contract objectively manifest intent to be bound by, and share understanding of, terms of proposed agreement). The intent of the parties, which is a question of fact, controls. Steele, 220 Kan. at 428, 552 P.2d at 962.

Under Kansas law, settlement agreements need not be in writing to be enforceable. Lewis,

14 Kan. App.2d at 203-04, 785 P.2d at 1368-69. But where the parties agree in writing, and the agreement is unambiguous, Kansas courts determine the intent of the parties from the four corners of the instrument, harmonizing the language therein if possible. Hall v. JFW, Inc., 20 Kan. App.2d 845, 848-49, 893 P.2d 837, 840 (1995) (citing Brown v. Lang, 234 Kan. 610, 610, 675 P.2d 842, 843 (1984); Wiles v. Wiles, 202 Kan. 613, 619, 452 P.2d 271, 276-77 (1969)). They enforce unambiguous contracts according to plain, general and common meaning. Id. (citing Wood River Pipeline Co. v. Willbros Energy Servs. Co., 241 Kan. 580, 580, 738 P.2d 866, 867 (1987)). When a contract is complete, unambiguous and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing is inadmissible. Simon v. Nat'l Farmers Org., Inc., 250 Kan. 676, 679-80, 829 P.2d 884, 887-88 (1992).

Contracting parties have a duty to learn the contents of a written contract before signing it. Albers, 248 Kan. at 578-79, 809 P.2d at 1197. This duty includes reading the contract and, if necessary, getting an explanation of its terms. Id.; Sutherland v. Sutherland, 187 Kan. 599, 610, 358 P.2d 776, 785 (1961). Negligent failure to read a contract estops the contracting party from voiding the contract on the ground of ignorance of its contents. Albers, 248 Kan. at 578-79, 809 P.2d at 1197; Rosenbaum v. Tex. Energies, Inc., 241 Kan. 295, 299, 736 P.2d 888, 891-92 (1987). A party who signs a written contract is bound by its provisions regardless of his failure to read or understand the terms, unless he entered the contract due to fraud, undue influence or mutual mistake. Albers, 248 Kan. at 578-79, 809 P.2d at 1197; Rosenbaum, 241 Kan. at 299, 736 P.2d at 891-92; Sutherland, 187 Kan. at 610, 358 P.2d 785.

**Factual Background**

On October 9, 2012, plaintiff and defendant's counsel attended a scheduling conference with U.S. Magistrate Judge James P. O'Hara. Judge O'Hara strongly encouraged the parties to settle the case. Heeding Judge O'Hara's good advice, the parties promptly resumed settlement negotiations. Before leaving the courthouse, the parties orally agreed to settle the case. Plaintiff states that he understood defendant's obligations under the settlement agreement to include paying money and "fixing" the alleged credit reporting error. In exchange, plaintiff would keep the agreement confidential and dismiss the case with prejudice. In light of the parties' agreement, defendant's counsel contacted Judge O'Hara's chambers to inform him of the settlement. The record contains no contemporaneous memorialization of the terms of the parties' oral agreement.

Defendant's counsel reduced the oral agreement to writing and emailed it to plaintiff, stating as follows: "Please see attached & give me your thoughts. If you are ready to sign, please sign & return to me by fax or email. Thanks." Doc. #27-4. The written settlement agreements states in part as follows:

> Ryan Eagle agrees to dismiss with prejudice the Lawsuit, which is currently pending in the United States District Court for the District of Kansas. Ryan Eagle also hereby agrees that he will not individually, or as a member of a class, commence any action or proceeding against Defendant regarding the Occurrence. Ryan Eagle also agrees that he will not provide information or make any claim or complaint to any federal, state, or local agency or any other public or private entity regarding the Occurrence. All such claims that were made or could have been made are fully and forever released, and any information relating to said claims is strictly confidential as set forth below.
>
> In exchange for, and in consideration of, Ryan Eagle's dismissal with prejudice of the Lawsuit, and fully confidential release of all such claims, Defendant hereby agrees to pay to the order of Ryan Eagle the sum of one thousand three hundred fifty dollars even ($1,350.00). As inducement for Defendant to enter into this mutual agreement, Ryan Eagle agrees that the settlement of the Occurrence, the terms of settlement, the terms of this Release, the facts surrounding the Occurrence,

and any recordings or other documentation of any type that in any manner relates to the Occurrence or any of the facts surrounding the Occurrence, shall remain STRICTLY CONFIDENTIAL, . . . .

The Parties agree that actual damages flowing from breach of the confidentiality obligations created by this agreement or other such terms set forth above would be difficult or impossible to assess and prove, and therefore stipulate to liquidated damages in the amount of one thousand three hundred fifty dollars even ($1,350.00) plus all court costs and process fees incurred and $250.00 attorney fees associated with any lawsuit filed to enforce the terms of this Agreement or to collect the liquidated damages following a breach of confidentiality. Nothing in this full release shall be construed so as to prevent either party from enforcing the terms of this Agreement in the future by whatever legal means are available.

      Ryan Eagle acknowledges that Defendant denies liability and responsibility for any and all claims asserted by Ryan Eagle and nothing herein should be construed as an admission of liability. Ryan Eagle represents and warrants that he has not assigned all or any portion of the rights, titles, or interests in or with respect to the matters released hereunder, and that no trustee in bankruptcy or assignee for the benefit of creditors has any right to his claims hereby released. Ryan Eagle further acknowledges that nothing in this Release and Settlement of All Claims shall act to forgive any underlying debt. Ryan Eagle acknowledges that Kansas Counselors, Inc. does not have authority to resolve any underlying debt. No debt is forgiven.

      As additional consideration for the dismissal of the Lawsuit pending in federal court in the state of Kansas, the Parties acknowledge that they fully understand the terms of the settlement and that they voluntarily accept the terms of this agreement for the purpose of making full and final compromise, adjustment, and settlement of any losses and damages. The Parties have had a full and fair opportunity to review this Agreement, and have it reviewed by independent counsel, and the Parties agree that it shall be treated as having been mutually drafted, and the terms herein are contractual and not mere recitals.

* * *

For the purpose of indicating acceptance and approval of the terms of this Release, electronic/facsimile signatures shall be acceptable.

* * *

      No promise, inducement or agreement not herein expressed has been made to the undersigned and this release contains the entire agreement between the parties hereto. THE UNDERSIGNED ACKNOWLEGE [sic] THAT THEY HAVE READ

> THIS FULL AND FINAL RELEASE; THEY HAVE AUTHORITY TO BIND THEMSELVES AS SET FORTH HEREIN; AND THEY FULLY UNDERSTAND ALL TERMS HEREIN. AGREED AS MY FREE ACT AND DEED . . . .

On October 9, 2012 – the same day defendant's counsel emailed the offer – plaintiff signed the agreement and emailed the signature page to defendant's counsel. See Doc. #27-2. Shortly thereafter, plaintiff tried to renege and reopen settlement negotiations. Plaintiff describes the series of events as follows:

> Upon Plaintiff's first glance of the initially proposed written settlement terms provided on October 9, 2012 at 12:50pm by Defendant's counsel, Plaintiff believed the agreement would bring fair resolution. Hence, Plaintiff signed the contract and emailed only page 3, signature page, to the Defendant's counsel. Plaintiff admits he signed this agreement without completely understanding it and without first seeking expert advice of legal counsel to provide proper meaning, in which Plaintiff now has.
>
> Immediately after signing page 3 of the settlement agreement on October 9, 2012 between 12:50pm and 1:30pm Plaintiff more closely read the agreement and then contacted Defendant's counsel twice by email and once by voice message to dispute language in the settlement agreement which would permit Defendant to continue illegal credit reporting actions against Plaintiff. This is the main cause of Plaintiff's claim in this case . . . . If permitted to stand, this settlement agreement would permit Defendant to not remediate, and to continue the unlawful practice(s) which are the basis of Plaintiff's Complaint as proven by the Plaintiff's most current three credit bureau reports. Plaintiff believes that a provision should have been included in this agreement whereby Defendant would remedy the improper reporting which has occurred.
>
> Later on October 9, 2012 at 4:49pm Defendant's counsel contacted Plaintiff via email explaining counsel had discussed Plaintiff's concerns with Defendant and proposed a newly redrafted settlement agreement addressing such concerns. However, even with this proposed agreement, Plaintiff continued to believe Defendant would hold an unfair advantage with permission to continue violating FDCPA and FCRA laws against Plaintiff, without any further legal recourse for Plaintiff, as such was denied by this proposed settlement agreement. With Defendant's proposed second settlement offer Plaintiff believed the agreement he had signed was no longer considered an agreement, and that settlement negotiations were continuing.
>
> On October 10, 2012 at 1:01am with the belief there had been no settlement, and that settlement negotiations were continuing, Plaintiff proposed his own counter

> settlement proposal to Defendant's counsel via email. Defendant's counsel never stated he felt the initial settlement agreement which Plaintiff signed would be pursued, instead continuing to discuss settlement with Plaintiff, as if no settlement agreement existed, again providing reason to believe any such previous settlement agreement had been cancelled.
>
> On October 10, 2012 at 3:57pm Plaintiff emailed the Court to inform of continued negotiations.
>
> On October 10, 2012 at 4:07pm, the day after Defendant's counsel received by Plaintiff an erroneously signed settlement agreement in which the Defendant's counsel now wishes to enforce, and in response to Plaintiff's most recent settlement offer, counsel for the Defendant emailed the Court stating Defendant wished to proceed with the scheduling conference order, and indicating a failure of the parties to reach settlement agreement. By Counsel for Defendant's failure to make reference to any previously agreed upon settlement and by apologizing to the Court for failure to reach a settlement agreement, Plaintiff reasonably believed all previous settlement agreements had been revoked, and there was no settlement.

Plaintiff's Motion To Vacate Settlement Agreement (Doc. #26) filed October 19, 2012 at 2-3

(citation to exhibits omitted).

Plaintiff's "Index To Exhibits," describes the signed settlement agreement as "1st written settlement offered by Defendant's counsel and erroneously signed by Plaintiff in which Defendant's counsel now wishes to enforce." Doc. #27-1. Defendant has yet to sign the agreement.

Defendant thought that the signed settlement agreement had resolved the case. It describes its reasons for continuing settlement negotiations after reaching that agreement as follows:

> Through multiple emails and voicemails to counsel for KCI, Plaintiff then demanded additional items such as more money, forgiveness of the underlying debt, and updated reporting to certain credit bureaus. Though an agreement already had been reached, in the interest of ridding themselves of Mr. Eagle's harassment, KCI capitulated to the additional agreement (except payment of more money) and Mr. Eagle was notified by email. Attached to that email was the additional agreement drafted by Counsel for KCI.

Defendant's Memorandum In Opposition To Plaintiff's Motion To Vacate Settlement Agreement

(Doc. #37) filed November 1, 2012 at 3-4 (citations to docket sheet omitted).

-7-

Other than the initial settlement agreement, which plaintiff signed on October 9, 2012, the parties have not agreed to any additional or revised settlement terms.

## **Analysis**

This is clearly a case of buyer's remorse – not mutual mistake and not unilateral mistake induced by fraud or duress. Plaintiff negotiated a settlement, orally agreed to settle, then signed a written settlement agreement only to regret his decision a few minutes later. Kansas law does not allow a party to repudiate a settlement agreement under these circumstances.

By its title, plaintiff's motion to vacate the parties' settlement agreement appears to concede that the parties reached an enforceable settlement agreement, which plaintiff now wants to back out of. The motion states, however, that plaintiff "believed the agreement he had signed was no longer considered an agreement, and that settlement negotiations were continuing." Plaintiff's Motion To Vacate Settlement Agreement (Doc. #26) at 3; see also id. at 3-4 (plaintiff believed that "there had been no settlement, and that settlement negotiations were continuing; defendant's engagement in negotiations and email to Judge O'Hara regarding scheduling conference gave plaintiff reason to believe that "any . . . previous settlement agreement had been cancelled"; and that plaintiff "reasonably believed all previous settlement agreements had been revoked, and there was no settlement"). Although plaintiff thought that the settlement agreement had been "cancelled" or "revoked," he provides no legal basis for the Court to find that it had been.

Based on plaintiff's own version of events, the Court finds that the parties reached a binding settlement agreement. The parties' objective manifestations of assent indicate that the parties had a meeting of the minds on the essential terms of the agreement. On October 9, 2012, defendant's counsel emailed plaintiff a settlement offer. The text of the email stated: "Please see attached &

give me your thoughts. If you are ready to sign, please sign & return to me by fax or email. Thanks." Doc. #27-4. Plaintiff signed the agreement that day. See Doc. #27-2. Plaintiff's signature indicated acceptance of the offer and a meeting of the minds regarding the terms of the contract. Andra, 2012 WL 4937465, at *7 (by signing written contract, party manifests acceptance of terms, even if party believes he may later renounce agreement or harbors an unstated intent not to be bound). That defendant had not yet signed the agreement is immaterial. The settlement agreement does not condition its enforceability on defendant's signature.

Having found that the parties' written settlement agreement is binding and enforceable, plaintiff may repudiate it only by showing that defendant acted fraudulently or in bad faith. Krantz, 271 Kan. at 241-42, 21 P.3d at 567. Plaintiff has not done so. Rather, he seeks to repudiate the settlement simply because he realized – after signing the agreement – that he wanted a better deal than what he got. Plaintiff's failure to carefully read the agreement before signing it, and his change of mind after signing it, provide no basis for vacating the settlement. See Woods, 45 F.3d at 378 (party who knowingly and voluntarily enters settlement ordinarily cannot avoid settlement simply because he changes his mind); Krantz, 271 Kan. at 241-42, 21 P.3d at 567 (in absence of bad faith or fraud, neither party permitted to repudiate settlement agreement); Albers, 248 Kan. at 578-79, 809 P.2d at 1197 (in absence of fraud or bad faith, failure to read and understand terms of agreement no basis for setting aside agreement); Fieser, 212 Kan. at 30, 509 P.2d at 1160-61 (mere mistake of fact on part of one party to release, in absence of fraud, duress, undue influence or mental incapacity, is not sufficient ground for avoidance of release); Lewis, 14 Kan. App.2d at 203, 785 P.2d at 1368 (party's change of mind does not amount to allegations of fraud or bad faith).

For these reasons, the Court finds no basis for vacating the parties' settlement agreement.

Because the parties reached a binding settlement, see Doc. #27-2, not marred by bad faith or fraud, the Court enforces the agreement. See Krantz, 271 Kan. at 241-42, 21 P.3d at 567.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion To Vacate Settlement Agreement (Doc. #26) filed October 19, 2012, be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Motion To Enforce Settlement Agreement (Doc. #37) filed November 1, 2012, be and hereby is **SUSTAINED**. The Court enforces the parties' settlement agreement dated October 9, 2012, see Doc. #27-2, and dismisses the case with prejudice.

Dated this 8th day of January, 2013 at Kansas City, Kansas.

>                          s/ Kathryn H. Vratil
>                          KATHRYN H. VRATIL
>                          United States District Judge